Barnes agt. Atlantic Mutual Life Insurance Company.

---

# SUPREME COURT.

WILLIAM BARNES agt. THE ATLANTIC MUTUAL LIFE INSURANCE COMPANY and EDWARD NEWCOMB, as receiver thereof.

*Insolvent insurance company — Receiver — Power of the court to order payment to counsel employed by the company out of funds in the hands of the receiver though they were unsuccessful in the litigation.*

The superintendent of the insurance department made a report in reference to The Atlantic Mutual Life Insurance Company, in pursuance of the laws of 1869, and on this report the attorney-general instituted the usual proceeding to wind up the company and place its effects in the hands of a receiver, and an order appointing a receiver was made. At the commencement of these proceedings the plaintiff, in behalf of the insurance company and upon and by virtue of an employment of its appropriate officers, undertook to and did defend the proceedings up to the time of the appointment of the receiver. With the decision appointing a receiver the company was not satisfied, it still insisted on its solvency and right to transact its own business ; and although the defendant Newcomb, who was appointed receiver, at once filed his

bond and took possession an appeal from the order was taken by the plaintiff acting as attorney of the company; and various other proceedings were had, in all of which the plaintiff appeared for and conducted the same for and on behalf of the company:

*Held,* that an action is properly brought and may be maintained by the attorney against the company and the receiver for his services, disbursements and expenses, and the court has power to order payment to the plaintiff out of the funds in the hands of the receiver.

*Held,* further (after reciting the history of the proceedings taken by the company and the further fact that all these proceedings were taken in good faith by the company and its counsel, and in the honest and conscientious belief of its solvency and ability to manage its affairs without the intervention of the court), that under such circumstances the managers and officers of the company not only had the right but it was their duty to do what they could to keep it in life; and the plaintiff having been employed by the company the court ought to exercise such power and order payment to the plaintiff out of the funds in the hands of the receiver.

*Held,* also, that the objection urged by the defendant that this action by the company, these various proceedings that were had after the appointment of a receiver, must be regarded as a violation of and as prohibited by the order appointing the receiver and, therefore, contemptuous, is clearly untenable. The company are in no position to raise such a question. They having employed counsel and urged on these proceedings they cannot now object to the counsel receiving any compensation for his labor, or reimbursement for his expenses, because they were violating the order of the court when they employed and directed it to be done.

Nor is the plaintiff's claim barred by any previous action taken by the court as to the allowance of costs. The appellate courts could make no provision except for taxable costs which, from the proof in this case, would afford no adequate compensation for the labor performed and the disbursements incurred.

*Albany Special Term, May,* 1880.

*R. W. Peckham* and *William Barnes,* for plaintiff.

*Henry Smith,* for receiver.

*William G. Weed,* for company.

OSBORN, *J.* — This cause was tried before me at an adjourned Albany circuit without a jury. There is no disagreement as

to facts. There is no doubt that the plaintiff, or the firm of which he was a member, in behalf of the defendant The Atlantic Mutual Life Insurance Company, and upon and by virtue of the employment of its appropriate officers, rendered the services and incurred the disbursements and expenses specified in the schedule annexed to the complaint. That the value of the services rendered amounted to the full sum charged is testified to by two disinterested witnesses, and is not contradicted by any evidence in the case. Notwithstanding this the defendants assert that the plaintiff cannot maintain this action and is not entitled to the relief demanded, or to any part thereof.

The company appears by Mr. William G. Weed and insists that no judgment can pass against it for the reason that all the services and disbursements charged for were after it had been placed in the hands of the defendant Newcomb, as receiver, and that it could not, therefore, legally incur any such liability and had no authority for contracting with the plaintiff or his firm for the rendition of any such services, &c. Here let me say that the plaintiff, by an assignment of his partner, has become the sole owner of the claim in suit and so brings the action in his individual name. The claim of the company is, to say the least, somewhat novel. It must be that it is founded on the notion that the usual injunction clause in the order appointing the receiver so far prohibited the company from acting or transacting any business as to make its action in the employment of attorneys and counsel illegal and invalid, and so exonerate it from all liability to the plaintiff for the great amount of labor performed and disbursements and expenses incurred, and which is the subject of this controversy. This is the position of the company as nearly as I could ascertain its position on the trial and argument, and, as I stated before, is somewhat novel in pleading a disregard and violation of an order of this court as an excuse or defense for its acts.

The defendant Newcomb, as receiver, appears in the action

through his counsel, Hon. Henry Smith, and interposes a defense much more plausible and presenting questions somewhat troublesome and worthy, at all events, of the most careful and serious consideration. He insists that all the services and disbursements for which the plaintiff seeks to recover, and which he asks shall be declared a lien upon the funds in the hands of the receiver and paid therefrom, were in fact after the receiver had been regularly appointed, filed his bond and taken possession of the assets of the company as the court's officer, and for the benefit of and in the interest of the great number interested in the fund, there can be no recovery as against the receiver or to reach the fund in his hands. He further says that all these services were performed and expenses incurred in proceedings and litigations hostile to the receiver and to the order of the court appointing him. In view of these facts it is forcibly urged:

1st. That the court has no power to direct the amount of the plaintiff's claim created in acting for the company in a hostile and unsuccessful proceeding to be paid out of the funds in the hands of the receiver. That no authority for such an order can be found in the act providing for the appointment of receivers under which the proceedings were instituted by which Newcomb was appointed, or elsewhere, but in fact that it would be in contravention to the act specially providing for the disposition of the funds (*Laws* 1869, *chap*. 902).

2d. It is further urged on the part of the receiver that if the court has such power it ought not to be exercised; that the court has taken the funds and assets of the company out of its hands and put them in charge of its (the court's) officer because of the company's mismanagement, and that it would be unjust to compel policyholders to pay counsel in trying to defeat the proper order of the court; and,

3d. That whatever power or discretion the court may have had over this fund in awarding compensation to plaintiff was determined on the decision of each successive proceeding.

When these objections, so ingeniously put and ably and forcibly urged by the learned counsel for the receiver, are satisfactorily met and answered, together with the one first suggested, and which is also insisted upon by the receiver, to wit, that every step taken by the plaintiff for this company for which he sues was a violation of the restraining and injunction order of the court appointing the receiver, we shall have but little difficulty in arriving at a proper disposition to be made of this case.

In order to determine these various questions intelligently a very brief statement of facts may be profitable.

The defendant "The Atlantic Mutual Life Insurance Company " commenced its existence and business in the year 1866. It had, in May, 1877, $1,100,000, or thereabouts, as assets, and thousands of policyholders. It had been, as these figures show, doing a large and extensive business during all the years from 1866 to 1877, and its managers enjoyed the confidence and respect of all who were interested.

On the 9th day of May, 1877, the superintendent of the insurance department made a report in reference to it in pursuance of the laws of 1869 above cited. On this report the people, by the attorney-general, on the 11th day of May, 1877, instituted the usual proceeding to wind up the company and place its effects in the hands of a receiver.

On the return day of the order to show cause the company appeared by the plaintiff and others as counsel to resist the application. The company insisted that there was nothing in its condition to warrant the interference of the court. Mr. justice WESTBROOK, before whom these proceedings were had, would not, or did not, appoint the receiver upon the paper presented but took testimony as to its actual condition, and so small was the amount of the alleged deficit that time was afforded to make up the same. This, it seems, was not done, and it was not until August 6, 1877, that the order appointing a receiver was in fact made.

Up to this point the plaintiff, or his firm, were paid for

their services, except Stein, in bill No. 1. But with this decision the company was not satisfied. It still insisted on its solvency and right to transact its own business; and although the defendant Newcomb, who was appointed receiver, at once filed his bond and took possession, an appeal from the order was taken to the general term and the order affirmed, "with ten dollars costs and printing disbursements, to be paid out of any funds in the hands of the receiver, now or hereafter." From this order an appeal was taken to the court of appeals, which court affirmed the order of the general term, so far as the appointment of a receiver was concerned, but modified the order in important particulars, as will be seen by a reference to the order of that court, and then directed the costs of the company, as well as of the attorney-general, to be paid out of the funds in the hands of the receiver. But this, of course, only related to the taxable costs, which would be inadequate to compensate the attorneys of the company.

The next step in the case seems to have been an opposition by the company to the confirmation of the actuary's report. Because of this the report was sent back for revision, and when, after much time and labor, a modified report was made, though still opposed, it was confirmed with no provision as to costs. From this an appeal was taken by the company to the general term, where the order was affirmed and no provision made as to costs. An appeal from this to the court of appeals was dismissed without costs to either party.

Then followed a motion on behalf of the company to discharge the receiver and to be restored and reinstated to its assets and so go on and transact its own business.

The company all through these various legal proceedings insisted, and down to the time of this trial still insisted, that it was solvent and ought not to be interfered with in the conduct and management of its business. But this motion was denied with no provision as to costs. An appeal was taken to the general term, and, if I mistake not, the attorney-general also appealed from this last order, but the general term

affirmed the order, with costs and printing disbursements, to be paid to the receiver by the people.    On appeal to the court of appeals the general term order was affirmed, without costs to either party.

I have not these various orders before me, but I think I have given them correctly and in the order in which they occurred.    Certainly they are given with sufficient accuracy for my present purpose.

Thus it will be seen that there were three separate proceedings growing out of the appointment of a receiver for this company, all of which were bitterly and stubbornly resisted and opposed, and in none of them was there a cessation of legal warfare until the court of last resort had been appealed to.    Although the company was substantially defeated at each successive step in the litigation it is entirely clear to my mind, from all the circumstances as well as positive evidence in the case, that it was acting fairly and in good faith under the advice of able lawyers, and with a well-settled conviction of its solvency and ability as well as right to transact its own business.

The court, upon the first application, was evidently embarrassed from the papers presented as to its duty in the premises and so took oral evidence of its condition.

It is, perhaps, the only application ever made for the court's interference in the affairs of an institution of over a million of dollars of assets where the alleged deficit was for so small an amount.

I mention this not as an intended criticism on the action of the court; by no means.    I do not question the correctness of its action, but only to show that there was good ground for the action of the company and that it and its advisers acted in good faith in the premises.

The proof is clear that the services and disbursements were rendered not only with the knowledge and assent of the company but on its express employment and the plaintiff ought to be compensated therefor.    That his right to recover against

the company in an ordinary action at law for these services and disbursements is entirely clear. But such a recovery alone would avail nothing. The funds and assets are now all in the hands of the defendant Newcomb, as receiver, and so the action is brought in this form and the equitable power of the court invoked in order that the plaintiff may obtain what is his just due.

And this brings us now to consider the legal questions involved; and, first, has the court any power to' order payment to the plaintiff out of the funds in the hands of the receiver? I grant that this action is somewhat novel, and, perhaps, no case can be found entirely analogous; but there are certain familiar principles, well understood, with very many adjudications of the courts in this and other states so similar in principle that I have come to the conclusion that such power exists, and in a proper case can and should be exercised. It must be constantly borne in mind that the funds or assets of the company are now under the control of the court. The receiver is its officer. Not one dollar of it can be paid out properly without the authority of the court. Thus it would seem, as an original question, that there was, and of necessity must be, a power inherent in the court to give such direction as to the disposition or distribution of the fund as shall seem to be just and equitable. We are not, however, left without precedent or authority. In the very proceedings taken by the company and above referred to in the order in which they occurred it will be seen that the court of appeals recognized this doctrine and directed the costs of the company in that court, though unsuccessful, to be paid out of the funds in the hands of the receiver. So, also, in the case of this very company, an effort was made by certain parties interested, as appears by one of the orders on file and the report of the receiver to the legislature, after the appointment of the receiver to put it (the company) into bankruptcy, and the costs, counsel fees and expenses of the receiver were ordered paid out of the fund.

So, also, numerous cases could be cited and precedents given to show that the court has granted costs, counsel fees and expenses out of the fund to lawyers in life insurance dissolution cases appearing merely for creditors and policyholders.

The same firm who rendered the services in suit were allowed by an order of the court $1,500 for professional services rendered on the retainer of policyholders in the Continental Life Insurance Company, and the same or its payment charged upon the fund.

The general term in the first department, as I am advised, made an order in the case of the Security Life Insurance Company that the intervening policyholders were at liberty to make application to the court for an order directing payment of the costs and expenses of the action or actions brought by them out of the funds or assets in the hands of the corporation in priority to other claims. In the case of *Van Schmidt* agt. *Huntington* (1 *Cal. R.*, 56) it was held "that where it was for the interest of all parties concerned that the company should be legally dissolved the costs and a counsel fee on each side should be paid out of the fund." And the power of the court over funds in its hands to award costs to be paid out of the fund to both parties asserting a claim thereto, has often been recognized in cases where a bill of interpleader has been filed (*Atkinson* agt. *Marks*, 1 *Cowen R.*, 693; *Badeau* agt. *Rogers*, 2 *Paige*, 209; *Richardson* agt. *Sutton*, 6 *Johns. Ch.*, 445; *Canfield* agt. *Sterling*, 1 *Hopk.*, 224).

A great variety of equitable actions can be found involving conflicting rights and interests to a particular fund or in a particular state where the power of the court to award costs to a party, though unsuccessful, has been recognized and established. Indeed, it is now so well adjudicated as to be beyond question; for instance, actions by legatees to enforce trusts under a will, actions for the construction of a will and many others that might be found. In mortgage foreclosures and partition actions, when there is reasonable ground for an appearance, answer and defense by a party, though unsuccess-

ful, it is a very common thing to award costs out of the proceeds of the sale of the property to the attorney for the unsuccessful litigant. So familiar is the rule in equity cases or proceedings that the power of the court over costs is in its own discretion that it is rarely, if ever, the subject of review; without further reasoning or reference to authority, it seems to me clear that the court has the power in this case to award the amount which the plaintiff is entitled to recover out of the funds in the hands of the receiver, and for such purpose that the action is properly brought in its present form and the receiver properly made a party defendant.

Assuming this to be so the next question that arises, ought the court to exercise such power in this particular case? With a view of answering this properly I have already recited the history of the proceedings taken by the company, and the further fact that all these proceedings were taken in good faith by the company and its counsel, and in the honest and conscientious belief of its solvency and ability to manage its affairs without the intervention of the court. Believing this, what was the duty of the company? Was it to submit passively? Would it have been justified in allowing its management and operations to be taken from it without resistance and its corporate existence wiped out? I think not. Indeed, the company was partially successful in the court of appeals on the appeal from the order of the general term affirming the special term order appointing a receiver. The court of appeals modified that order so "as not to dissolve the corporation, and so as not to give the securities deposited with the superintendent of the insurance department to the receiver." The fact that the court refused to appoint a receiver in the first instance on the papers presented but waited for other and further proof and to give an opportunity to make up the comparatively small deficit as claimed by the attorney-general; the modification of that order when made by the court of appeals; the fact that the attorney-general united in the appeal from the order subsequently made denying motion to

discharge the receiver and to restore the company its property and assets so that it might continue its business; all tend to show that the affairs of this company were in a situation entirely different from many, perhaps from any other that has been given over to a receiver, and that it was a debatable question, to say the least, as to whether it should be interfered with by the court. Undoubtedly its (the court's) action was proper and right, but the right was not so clear as to make resistance thereto by the company unreasonable or open to the suspicion that its action was not taken all through in good faith, with fair grounds to hope for success. Under such circumstances I think the managers and officers of the company not only had the right but that it was their duty to do what they could to keep it in life (*Sheldon Hat Co.* agt. *Eckmeyer Hat Co. and others*, 56 *How. Pr. R.*, 70; *Copeland* agt. *Citizens' Gas Co.*, 61 *Barb.*, 605, *and Abbott* agt. *American Hard Rubber Co.*, 33 *Barb.*, 538).

Another objection urged by the defendants that this action by the company, these various proceedings that were had after the appointment of a receiver, must be regarded as a violation of and as prohibited by the order appointing the receiver and, therefore, contemptuous, is clearly untenable. The language used warrants no such construction, and certainly no such thing could have been intended. As I said in the commencement of this opinion the company are in no position to raise such a question. It hardly lies with it or its officers now to say: True, we employed counsel and urged on these proceedings, but we now object to the counsel receiving any compensation for his labor or reimbursement for his expenses because we were violating the order of the court when we employed and directed it to be done.

The only other objection urged by the learned counsel for the receiver is, that if the court has or had any power over this fund, so far as the payment of the costs of the company is concerned, the same has been passed upon and determined by each successive proceeding. This cannot be sound.

Barnes agt. Atlantic Mutual Life Insurance Company.

The appellate courts could make no provision except for taxable costs, which, from the proof in this case, would afford no adequate compensation for the labor performed and the disbursements incurred.

So, also, it has in the same sense passed upon the receiver's costs and disbursements, but who doubts for a moment that the court can direct payment out of the fund (if it has not already done so) of a fair and reasonable sum to the counsel for the receiver for his costs, counsel fee and disbursements in the matter. I feel not the slightest embarrassment from this objection; if I am right in the main propositions discussed I am confident the plaintiff's claim is not barred by any previous action taken by the court as to the allowance of costs.

It follows from the views expressed that the plaintiff is entitled to the relief demanded in the complaint. The amount seems large, very large to me. I am aware of the well known and conceded ability of the plaintiff as a lawyer, and particularly in cases and proceedings of a character in which the services were rendered for which this action is brought. I can appreciate the great amount of labor and research bestowed and the large amount of money necessarily expended in printing and other expenses. Still, in view of the fact that the value of these services so rendered and charged were sworn to be fair and reasonable by disinterested witnesses offered by the plaintiff, and even $2,000 less than their actual value, and that no witness was called on the part of the defendant, or either of them, to question the same, I do not feel justified in departing from undisputed testimony to fix a different sum or amount.

The conclusions to which I have arrived have been hastily written but were not reached until after the most careful examination and investigation of the case, and the authorities to which my attention was called and others consistent with other official duties.

As I have stated the action is somewhat novel and not

entirely free from embarrassment. The interesting questions raised and the large amount involved demand and will doubtless receive the most careful consideration of the highest appellate tribunal, and when a decision thereon shall have been pronounced by that tribunal important principles will be settled as to which some doubts may now exist.

Judgment is ordered for the plaintiff for the amount and interest demanded in the complaint, and in the manner claimed, together with costs.